IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00645-BNB

ALAN SUDDUTH,

      Applicant,

v.

TOM CLEMENTS, Exec Director Colorado Dept of Corrections,
ANGEL MEDINA, Warden, Limon Correctional Facility, and
JOHN SUTHERS, Attorney General, State of Colorado,

      Respondents.

---

## ORDER OF DISMISSAL

---

Applicant, Alan Sudduth, through counsel, has filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1). He challenges the validity of his conviction and sentence imposed in Arapahoe County District Court Case No. 95CR646. Mr. Sudduth has paid the $5.00 filing fee.

On March 21, 2012, Magistrate Judge Boyd N. Boland directed Respondents to file a pre-answer response addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies under 28 U.S.C. § 2254(b)(1)(A). After obtaining an extension of time, Respondents submitted a Pre-Answer Response on May 16, 2012. (ECF No. 9). Applicant thereafter sought and was granted an extension of time to file his Reply, which he filed on August 7, 2012. (ECF No. 14). For the reasons stated below, the Court will dismiss the Application as untimely.

## I.      Background and State Court Proceedings

Mr. Sudduth was convicted of second degree murder and aggravated robbery pursuant to his guilty plea in Arapahoe County District Court Case No. 95CR646.   In exchange for his guilty plea, the Government dismissed charges of first degree murder after deliberation, first degree felony murder, and conspiracy to commit murder and robbery.   (*See generally* State Court R., 11/15/95 Hrg. Tr.).

On January 17, 1996, Mr. Sudduth was sentenced to forty-eight years for the second degree murder conviction and a consecutive twenty-two years for the aggravated robbery conviction.   (State Court R. vol. 1, at 169).   Applicant did not appeal his convictions or sentence.   The mittimus was amended on May 15, 1996, to reflect the joint and several liability of Mr. Sudduth and his co-defendants for restitution.   (*Id.* at 177).

In April 1996, Mr. Sudduth submitted a *pro se* letter to the state district court. (State Court R., vol. 1, at 171).   In the letter, he stated, in pertinent part:

> . . . This letter is to ask that you appoint an attorney to look into and assist me in correcting an error that has taken place in my case.
>
> After I signed the guilty plea form, I was told that the money (a $20.00) bill that was suppose[d] to be the property taken in the aggravated robbery I plead guilty to committing, was found on the body of the victim.  If this is the case, I would like to withdraw my guilty plea to that charge <u>only</u>."
>
> Please consider this letter a formal request for the appointment of counsel to investigate this situation, and take the proper steps to correct it if a mistake has been made.  If I am mistaken about the $20.00 bill, I would like to know what property was taken in the aggravated robbery.

(*Id.*).  (Emphasis in the original).  The district court construed the letter as a motion and denied it on May 18, 1996.  (*Id.*)

On May 13, 1996, Mr. Sudduth filed *pro se* motions with the state district court requesting leave to proceed *in forma pauperis* and transcripts of the preliminary hearing and providency hearing.  (ECF No. 9-1, at 30).[1]  The court granted the motion to proceed *in forma pauperis* on May 18, 1996, but denied the request for transcripts in a separate order that same day.  (ECF No. 9-1, at 30).[2]

Mr. Sudduth did not receive copies of the May 18, 1996 order(s).[3]  (State Court R. vol. 4, at 807, ¶¶ 29-30).  He did not learn about the May 18, 1996 order(s) until 2008.  (*Id.* at ¶ 31).

On August 29, 1996, Mr. Sudduth submitted a letter to the state district court inquiring about the status of the motions he filed in May 1996. (State Court R., vol. 1, at 183).  He filed a petition for a writ of mandamus in the Colorado Supreme Court on October 17, 1996, to obtain a ruling on his May 1996 motions.  (*Id.* at 200).  The Colorado Supreme Court denied the petition on October 24, 1996. (*Id.* at 215).  The denial was without prejudice with leave to re-file "if the district court does not rule on pending motions within 60 days." (*Id.*).

---

[1]The official file-stamped copies of the May 13, 1996 motions have been lost and are no longer contained in the state district court file.  (*See* State Court R. vol. 4, at 767, ¶ 28; *see generally* vol. 1). However, Mr. Sudduth provided copies of the motions as attachments to an August 25, 1996 letter he filed with the state court inquiring about the status of the motions.  (*See id.* vol.1, at 184-87).

[2]The May 18, 1996 orders granting Mr. Sudduth leave to proceed *in forma pauperis* and denying his request for transcripts have been lost and are no longer in the state district court file.  (*See id.* vol. 4, at 807, ¶ 29; *see generally* vol. 1).

[3]Although the state court record is not entirely clear on this issue, it appears that Mr. Sudduth did not receive a copy of any of the three orders issued by the trial court on May 18, 1996.

Mr. Sudduth filed a second petition for a writ of mandamus on or about January 8, 1997,[4] to obtain a ruling on his May 1996 motions.  (*Id.* at 220).  The Colorado Supreme Court denied the petition as moot on January 21, 1997.  (*Id.* at 236).

On April 29, 1998, Mr. Sudduth filed *pro se* a motion for post-conviction relief pursuant to Colorado Rule of Criminal Procedure 35(c).  (*Id.* at 237).  In his motion, Applicant asserted that he was misadvised by trial counsel about mandatory parole and his eligibility for discretionary parole.  (*Id.* at 238).  The state district court denied the Rule 35(c) motion on May 15, 1998.  (*Id.* at 249).  Mr. Sudduth filed a notice of appeal on June 30, 1998.  (*Id.*, vol. 2, at 252).  On September 1, 1998, the Colorado Court of Appeals appointed alternate defense counsel to represent Applicant on appeal.  (*Id.* at 263).

On August 19, 1999, the Colorado Court of Appeals issued an opinion affirming in part and reversing in part the district court's May 15, 1998 order.  *See People v. Sudduth*, 991 P.2d 315 (Colo. App. 1999).  The reversal was predicated on a single post-conviction claim: "that defense counsel was ineffective in affirmatively advising [defendant] that he would serve no more than ten years in prison." *Id.* at 317.  The state appellate court further instructed: "At the hearing, defendant will have the burden of proving that counsel gave such advice and thereby provided ineffective assistance" causing him to plead guilty when he otherwise would have gone to trial.  *Id.* at 318.

---

[4]The state court record does not reflect the date on which this motion was received or filed by the Colorado Supreme Court.  The motion is dated January 8, 1997 by Mr. Sudduth.  (State Court R. vol. 1, at 220).

On remand, the state trial court appointed three successive post-conviction attorneys to represent Mr. Sudduth in the Rule 35(c) proceeding: the first was appointed on November 5, 1999, and withdrew on October 17, 2000; the second was appointed on January 22, 2001, and withdrew on November 2, 2006;[5] and the third was appointed on February 12, 2008.  (State Court R., vol. 2, at 325, 332, 338, 395; ECF No. 9-1, at 27).  Applicant's first and second appointed attorneys withdrew without filing a request to schedule the remand hearing or a supplemental brief on his behalf.  (*See generally* ECF No. 9-1, at 24-27 of 36).

On February 25, 2003, Mr. Sudduth filed *pro se* a motion for post-conviction relief alleging, *inter alia*, ineffective assistance of trial counsel based on a failure to investigate the facts and defenses in light of co-defendant Reed's statements that he, and not Mr. Sudduth, shot the cab driver. (State Court R. vol. 2, at 348).  Mr. Sudduth's current counsel, who has represented him since being appointed by the state district court in February 2008, filed supplemental post-conviction briefs in June and November 2008. (*Id.* at 435; vol. 3, at 482).  The state district court held evidentiary hearings on the remanded claim and on the supplemental issues filed by Mr. Sudduth and his counsel on July 23, 2008; November 21, 2008; and June 2, 2009.  (ECF Nos. 1-10, 1-12, and 1-15).

Following the July 2008 hearing on the remanded claim, the state district court concluded that Mr. Sudduth failed to prove by a preponderance of the evidence that his plea counsel had advised him that he would be eligible for release or parole after ten

---

[5]Mr. Sudduth was not made aware of the appointment of second post-conviction counsel until September 17, 2003.  (State Court R. vol. 4, at 808, ¶¶ 45, 47).

years of imprisonment, and, therefore, counsel did not provide Applicant with constitutionally ineffective assistance.  (ECF No. 9-1, at 21).

On January 5, 2010, the state district court entered an order granting Mr. Sudduth's request to withdraw his plea based on the alleged ineffective assistance of plea counsel in failing to conduct an adequate pre-trial investigation before advising Applicant to plead guilty.  (State Court R. vol. 4, at 802-814).  The district court further concluded that co-defendant Reed's sworn testimony at the Rule 35(c) evidentiary hearing that he was the shooter was "newly discovered evidence" proving Mr. Sudduth's actual innocence.  (*Id.* at 812-13, ¶ 6).  The government appealed.

The Colorado Court of Appeals reversed the trial court's order in *People v. Sudduth*, No. 10CA0324 (Colo. App. Sept. 2, 2010) (not published) (ECF No. 1-18), finding that Applicant's claims were time barred pursuant to Colo.Rev.Stat. § 16-5-402 (generally requiring collateral attacks on non class 1 felony convictions to commence within three years of conviction), and that the untimely filing was not warranted by justifiable excuse or excusable neglect.  The state appellate court further determined that the trial court erred in concluding that the guilty plea should be vacated based on "newly discovered evidence."  (ECF No. 1-18, at 19-21 of 22).  Mr. Sudduth's  petition for certiorari review with the Colorado Supreme Court was denied on March 14, 2011. (ECF No. 1-20).

Mr. Sudduth initiated this action on March 14, 2012, asserting a single claim for relief: that his plea counsel was constitutionally ineffective in failing to conduct an adequate investigation into the facts and law prior to advising him to plead guilty. Respondents argue that the Application is barred by the one-year limitation period in 28

6

U.S.C. § 2244(d).  Respondents further contend that Mr. Sudduth has procedurally

defaulted his claim in the state courts which precludes this Court's review of the merits.

## II.     AEDPA Time Bar

Respondents argue that the Application is untimely under the one-year limitation

period set forth in 28 U.S.C. § 2244(d).  The Anti-Terrorism and Effective Death Penalty

Act (AEDPA) provides:

> (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
>> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### A.      Date that Mr. Sudduth's Conviction was Final

Mr. Sudduth was sentenced on January 17, 1996.  His conviction became final forty-five days later, on March 4, 1996,[6] when the time for filing a direct appeal expired. *See* Colo. App. R. 4(b)(1).  Because Applicant's conviction was final before AEDPA became effective, the one-year limitations period began to run from April 24, 1996, the AEDPA's effective date. *See Allen v. Siebert*, 552 U.S. 3, 4 (2007) (per curiam); *Fisher v. Gibson,* 262 F.3d 1135, 1142 (10th Cir. 2001).

Relying on state law, Mr. Sudduth argues that his conviction was not final until forty-five days after the state district court issued an order amending the mittimus on May 18, 1996.  (*See* ECF No. 14, at 7 of 26; ECF No. 1-3).

Federal law determines when a state judgment of conviction becomes final to trigger the start of the statute of limitations for seeking post-conviction relief in federal court pursuant to 28 U.S.C. § 2254.  *See Graham v. Smelser*, 422 F. App'x 705, 707 (10th Cir. April 25, 2011) (unpublished) (rejecting the petitioner's reliance on *Leyva v. People*, 184 P.3d 48, 49 (Colo. 2008), and citing *Clay v. United States*, 537 U.S. 522, 531 (2003) ("[F]inality for the purpose of § 2244(d)(1)(A) is to be determined by reference to a uniform federal rule.")).

In *Graham*, the petitioner argued that the one-year limitation period for § 2254 petitions restarts when a court enters a mittimus to afford presentence credit on a sentence previously imposed.  The Tenth Circuit Court of Appeals found no federal authority to support that proposition and therefore applied the general rule that a

---

[6]Because the 45th day was a Saturday, Mr. Sudduth's conviction was final on Monday, March 4, 1996.  *See* Colo. App. R. 26(a).

defendant's judgment of conviction becomes final at "the conclusion of direct review or the expiration of time for seeking such review." *United States v. Burch*, 202 F.3d 1274, 1278 (10th Cir. 2000).

Here, the state district court's amendment to the mittimus did not impact Mr. Sudduth's sentence. Instead, the amendment reflected only that Applicant's co-defendants were jointly and severally liable for the restitution that the court ordered in the original sentencing order. (*See* ECF No. 1-3; 9-1, at 30 of 36). Mr. Sudduth has not cited any federal law to support his argument that he was resentenced on May 18, 1996, such that the AEDPA one-year limitation period restarted on that date.[7] Accordingly, the Court finds that the AEDPA one-year period commenced on April 24, 1996, as discussed above.

### B. State Post-Conviction Motions

The Court must next determine whether Mr. Sudduth filed state post-conviction motions that tolled the one-year limitation period. Pursuant to 28 U.S.C. § 2244(d)(2), a properly filed state court post-conviction motion tolls the one-year limitation period while the motion is pending. An application for post-conviction review is properly filed with the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). The requirements include:

---

[7]Even if the amendment to the restitution portion of Mr. Sudduth's sentence constituted a resentencing, that amendment did not affect the limitation period because Applicant does not challenge the sentencing amendment in his federal application. *See Vallez v. Hartley*, No. 08-1346, 305 F. App'x 505, 508 (10th Cir. Dec. 30, 2008) (unpublished) ("We are aware of no authority suggesting that resentencing can restart the limitations period when the prisoner seeks to bring only claims challenging his original conviction, as Mr. Vallez attempts to do here. Accordingly, the limitations period in this case began the date his original conviction became final.").

> (1) the place and time of filing; (2) the payment or waiver of any required filing fees; (3) the obtaining of any necessary judicial authorizations that are conditions precedent to filing, such as satisfying any filing preconditions that may have been imposed on an abusive filer; and (4) other conditions precedent that the state may impose upon the filing of a post-conviction motion.

*Habteselassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000).

The issue of whether a post-conviction motion is pending is a matter of federal law. *See Gibson v. Klinger*, 232 F.3d 799, 806 (10th Cir. 2000). The term "pending" includes "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999).

### 1.   The April 1996 letter

Mr. Sudduth filed a letter with the state district court in April 1996, asking the court to appoint counsel to investigate the facts supporting the charge of aggravated robbery because he wanted to withdraw his guilty plea.  The Court must determine whether the April 1996 letter is a post-conviction motion.

In *Wall v. Kohli*, ___ U.S. ___, 131 S.Ct. 1278 (2011), the Supreme Court determined that the phrase "application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" in 28 U.S.C. § 2244(d)(2) means a request for judicial reexamination of a judgment or claim in a proceeding outside of the direct review process.  *Id.* at 1285.  The Court went on to hold that a motion to reduce sentence filed under Rhode Island law was a state post-conviction motion that tolled the AEDPA one-year limitations period, in contrast to a motion for post-conviction discovery and a motion for appointment of counsel, "which generally are not direct

10

requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." *Id.* at 1286-87 and n.4.

Mr. Sudduth contends that the April 1996 letter should be construed, in part, as a motion for post-conviction relief because the state district court treated it as such and denied it. (ECF No. 14, at 8). There is force to Applicant's argument. In 1996, it was not uncommon for the state district courts to treat letters from prisoners as motions for post-conviction relief.[8] *See e.g. People v. Valdez*, 178 P.3d 1269, 1278-79 (Colo. App. 2007) (construing letter submitted to court from defendant in 1997 as request for post-conviction relief); *People v. Chang*, 179 P.3d 240, 242 (Colo. App. 2007) (same); *accord People v. Lopez*, 12 P.3d 869 (Colo. App. 2000) (trial court treated defendant's letter as a Crim. P. 32(d) motion for plea withdrawal prior to sentencing). The state district court construed Mr. Sudduth's motion, in part, as a request for withdrawal of his plea to the aggravated robbery charge. Specifically, the state district court ruled that "no grounds [were] stated for withdrawal of plea." (State Court R. vol. 1, at 171). The state court, to a limited extent, reexamined the judgment in a proceeding outside of the direct review process. The April 1996 letter therefore is properly characterized as a motion for post-conviction relief.[9] *See Habteselassie*, 209 F.3d at 1213 (concluding that motion for

---

[8]In 2004, Crim. P. 35(c) was amended in part by the addition of subsection 3, which requires that all postconviction motions either be filed on Form 4 or substantially comply with Form 4. See Crim. P. 35(c)(3)(II)-(IV). Form 4 is a standardized document that appears in the appendix to the Colorado Rules of Criminal Procedure. It requires certain minimum information about the conviction appealed and the claims asserted to be contained in a Crim. P. 35(c) motion. *See People v. Stanley*, 169 P.3d 258, 260 (Colo. App. 2007).

[9]The Court notes that the Colorado Court of Appeals observed in *People v. Sudduth*, 10CA0324 (Colo. App. Sept. 2, 2010), that the trial court's "characterization of [the April 1996] letter as the 'functional equivalent' of a Crim.P. Rule 35(c) motion is questionable." (ECF No. 1-18, at 12 of 22). However, because the state appellate court did not definitively conclude that the letter was not a post-conviction motion under Colorado law, this Court is not precluded from construing it as such for purposes of resolving

appointment of counsel was an "application for state post-conviction or other collateral review" where state court treated motion as one for post-conviction relief).

The next issue concerns the date on which the April 1996 letter can be deemed "filed" in the state district court.  The letter is dated April 26, 1996, by Applicant, but was not filed in the district court until April 30, 1996.  Under the AEDPA, the question of whether a post-conviction motion is properly filed turns on state requirements such as "the time limits upon its delivery."  *Artuz,* 531 U.S. at 8.

"[T]he federal mailbox rule announced in *Houston v. Lack,* 487 U.S. 266 (1985),[10] does not apply to § 2244(d)(2) for purposes of determining when the tolling period for a properly-filed state petition begins." *Adams v. LeMaster,* 223 F.3d 1177, 1181 (10th Cir. 2000).  Instead, state procedural law is controlling.  *Id.*; *Artuz*, 531 U.S. at 8.  Colorado did not enact a prisoner mailbox rule until July 2001.  *See* Colo. R. Crim. P. 45(e) (stating that a document filed by an inmate "is timely filed with the court if deposited in the institution's internal mailing system on or before the last day of filing."); Colo. R. Civ. P. 5(f) (similar).

Respondents argue that because Colorado had not adopted a prisoner mailbox rule in 1996, the April 1996 letter to the district court must be deemed filed on April 30, 1996, the date it was received by the court for filing.  In support of this contention, Respondents cite case law involving appeals filed pursuant to Colo. R. Civ. P. 106(a)(4).  *See Fraser v. Colo. Bd. of Parole*, 931 P.2d 560, 562 (Colo. App. 1996) ("A

---

the federal statute of limitations issue.

[10]In *Houston,* the Supreme Court held that a notice of appeal is filed under Fed. R. App. P. 3(a) and 4(a)(1) when the prisoner delivers it to prison authorities for forwarding to the court clerk.  487 U.S. at 270-76.

complaint filed by an inmate is considered to be filed when it is received by the clerk of

the district court, not when it is mailed or when it is given to a correctional officer by the

inmate."), *superseded by rules as recognized in Wallin v. Cosner*, 210 P.3d 479, 480

(Colo. App. 2009); *see also Talley v. Diesslin*, 908 P.2d 1173, 1174-75 (Colo. App.

1995) (declining to follow *Houston v. Lack*, and interpreting Colo. R. Civ. P. 106(b)'s

requirement that a notice of appeal be "filed in the district court" to require the notice be

received by the court, regardless of whether the filing party is a *pro se* prisoner).[11]

The Court has not located any Colorado appellate cases applying either a strict

filing requirement or the prisoner mailbox rule to motions for post-conviction relief prior

to July 2001.  Hence, the Court must endeavor to predict how the Colorado appellate

courts would have resolved the issue before 2001.  In Colorado, post-conviction

remedies are governed by Colo. R. Crim. P. 35.  The 1996 version of Rule 35 provided:

> One who is aggrieved and claiming either a right to be released or to have
> a judgment of conviction set aside on one or more of the grounds
> enumerated in section (c)(2) of this Rule may file a motion at any time[12] in
> the court which imposed sentence to vacate, set aside or correct the
> sentence, or to make such order as necessary to correct a violation of his
> constitutional rights.

Colo. Crim. P. Rule 35(c)(3) (1996).   In 1996, Colorado Rule of Civil Procedure 5(e)

stated: "The filing of pleadings and other papers with the court as defined by these rules

shall be made by filing them with the clerk of the court, except that the judge may permit

the papers to be filed with the judge, in which even the judge shall note thereon the

---

[11]In 1996, C.R.C.P. 106(b) provided that a complaint seeking review of a quasi-judicial action under C.R.C.P. 106(a)(4) must be filed in the district court not later than 30 days after the final decision is made in the administrative review process.

[12]Filings under Colo. R. Crim. P. 35(c) are subject to the three-year limitation period for non class 1 felonies imposed by § 16-5-402, C.R.S., which was enacted in 1981.

filing date and forthwith transmit them to the office of the clerk." Colo. R. Civ. P. 5(e) (1996).

The Colorado appellate courts apply the plain meaning rule to interpret court rules that are not ambiguous. *See Watson v. Fenney*, 800 P.2d 1373, 1375 (Colo. App. 1990); *see also Snyder Oil Co. v. Embree*, 862 P.2d 259, 262 (Colo. 1993) (applying rule to state statutes). Applying the plain meaning rule to the Colorado Court Rules at issue, it is clear that "filing with the clerk of the court" means, at a minimum, that a pleading or other document must be received by the clerk or the judge before the document is deemed filed. *See Adams*, 223 F.3d at 1182. Based on the reasoning of *Diesslin* and the plain meaning of the 1996 versions of Colo. R. Crim.P. 35(c) and Colo. R. Civ. P. 5(e), the Court finds that Colorado would have rejected the prisoner mailbox rule in 1996.[13]

Here, the record reflects that the state district court filed the letter on April 30, 1996. There is nothing else on the document to indicate that it was received by the clerk of the court on an earlier date. Accordingly, the Court finds that the letter was "filed" for purposes of 28 U.S.C. § 2244(d)(2) on April 30, 1996, six days after the limitation period commenced on April 24, 1996.[14] The motion was denied on May 18, 1996, and remained pending until July 2, 1996, during the forty-five days in which Mr. Sudduth could have filed an appeal. *See* Colo. App. R. 4(b)(1).

---

[13]The Court notes that other states had rejected the prison mailbox rule in 1996. *See State v. Parker*, 936 P.2d 1118, 1121 n. 4 (Utah. App. 1997) (collecting cases).

[14]The Court notes that even if the prisoner mailbox rule was available to Mr. Sudduth under Colorado procedural rules in 1996, he does not aver, or provide any other evidence to demonstrate, that he delivered the April 1996 letter to prison authorities for mailing on April 26, 2012, or any other date. *See generally Houston*, 487 U.S. at 275-76.

### 2.      The May 13, 1996 motions

While the April 30, 1996 motion was pending, Mr. Sudduth filed two motions on May 13, 1996: a "Motion to Proceed In Forma Pauperis" and a "Motion for Providency Hearing Transcripts, and for Preliminary Hearing Transcripts." (*See* State Court R. vol. 1, at 179-82).  The state post-conviction court found, following evidentiary hearings in 2008 and 2009, that Mr. Sudduth filed a motion on May 13, 1996, requesting to withdraw his guilty plea and seeking the appointment of counsel.  (State Court R. vol. 4, at 806, ¶ 28).  However, it appears that the state post-conviction court may have confused the May 13, 1996 motions with the April 30, 1996 motion.  All three motions were denied on May 18, 1996.  Although the district court's May 18, 1996 orders are missing from the state court file, the docket entries entered on that date reflect that the trial court granted Mr. Sudduth's request for leave to proceed *in forma pauperis* and denied his request for transcripts.  (ECF 9-1, at 30 of 36).  There is no mention in either docket entry of a request to withdraw Applicant's guilty plea.  In a separate docket entry for May 18, 1996, the trial court specifically denied Applicant's request for appointment of counsel to investigate the withdrawal of his guilty plea and found that no grounds were stated for a withdrawal of the plea, in accordance with the order stamped on the April 30, 1996 letter.  (*Id.*; *see also* State Court R. vol. 1, at 171).  Accordingly, the state court record reflects that neither motion filed by Mr. Sudduth on May 13, 1996, was an application for state post-conviction review that tolled the limitations period.  *See May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (motion for transcripts does not toll the one-year limitations period under 28 U.S.C. § 2244(d)(2)); *see also Wall*, 131 S.Ct. at

1285 (defining application for state post-conviction review as a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process).

However, even if the Court concluded that the May 13, 1996 motion for transcripts tolled the one-year limitations period, the motion was pending until July 2, 1996, as was the April 30, 1996 motion, and thus does not affect the Court's initial determination of timeliness based on statutory tolling.

###    3.    Expiration of the One-Year Period

After July 2, 1996 (when the April 30, 1996 motion for post-conviction review was no longer pending), Mr. Sudduth did not file another state post-conviction motion until April 29, 1998.  Between July 2, 1996 and April 29, 1998, the AEDPA one-year limitation period expired.

The state court record reflects that Mr. Sudduth's May 13, 1996 motion for transcripts was refiled in the state district court on October 23, 1996, and was denied on January 16, 1997.  (State Court R. vol. 1, at 195-96).  In denying the motion, the trial court stated: "Mere allegation does not support Rule 35(c) motion."  This motion and order are not reflected in the state district court's register of actions, however (see Doc. 9-1 at 29).  Even if this Court construed the October 23, 1996 motion as one for post-conviction review of the state judgment, the Court's timeliness analysis is not affected. The statute of limitations ran for 113 days from July 3, 1996, to October 23, 1996.  After the trial court denied the motion on January 16, 1997, Mr. Sudduth had until March 2, 1997, to appeal the order.  See Colo. App. R. 4(b)(1).  The limitations period commenced again on March 3, 1997, and expired before Mr. Sudduth filed his next post-conviction motion on April 29, 1998.

16

Furthermore, Mr. Sudduth's petitions for writs of mandamus filed with the Colorado Supreme Court in October 1996 and January 1997, which related to his May 13, 1996 motion for transcripts and for leave to proceed *in forma pauperis*, did not toll the limitations period.  *See May*, 339 F.3d at 1237 (limitations period was not tolled during pendency of Mr. May's petitions for writs of mandamus to obtain a ruling on his motions for transcripts).  However, even if the statute of limitations was tolled for 7 days while Mr. Sudduth's first petition for mandamus relief was pending (from October 17, 1996, to October 24, 1996), and for 13 days while his second petition for mandamus relief was pending (between January 8, 1997, and January 21, 1997), the Court's timeliness analysis is unchanged.

Finally, state post-conviction motions filed after the passage of the one-year period are not relevant to the timeliness of Mr. Sudduth's federal application.  *See Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2004) ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations."); *Fisher v. Gibson*, 262 F.3d 1135, 1142–43 (10th Cir. 2001) (same).

Accordingly, Mr. Sudduth's Application, filed on March 14, 2012, is time-barred unless equitable tolling applies.

## III.    Equitable Tolling

The one-year limitation period in 28 U.S.C. § 2244(d) is not jurisdictional and may be tolled for equitable reasons "in rare and exceptional circumstances." *Gibson,* 232 F.3d at 808 (internal quotation marks omitted); *see also Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).  Equitable tolling may be appropriate if (1) the petitioner is actually innocent; (2) an adversary's conduct or other extraordinary circumstance

prevents the petitioner from timely filing; or (3) the petitioner actively pursues judicial remedies but files a defective pleading within the statutory period. *See Holland v. Florida*, ___ U.S. ___, 130 S.Ct. 2549, 2562 (2010); *Gibson*, 232 F.3d at 808. Simple excusable neglect is not sufficient to support equitable tolling. *Gibson*, 232 F.3d at 808. Furthermore, equitable tolling is appropriate only if the petitioner pursues his claims diligently. *Miller*, 141 F.3d at 978. The petitioner must "allege with specificity 'the steps he took to diligently pursue his federal claims.'" *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (quoting *Miller*, 141 F.3d at 978)). Mr. Sudduth bears the burden of demonstrating that equitable tolling is appropriate in this action. *See id.*

### A.   Extraordinary Circumstances

Mr. Sudduth asserts that he is entitled to equitable tolling because he did not receive notice of the state district court's May 18, 1996 order denying his post-conviction motion until 2008.

The Tenth Circuit has recognized that delayed notice of a court order can constitute "extraordinary circumstances" sufficient to toll the statute of limitations, provided the prisoner has acted diligently in the matter. *See Woodward v. Williams*, 263 F.3d 1135, 1142-43 (10th Cir. 2001). Other Circuit Courts of Appeal are in accord. *See Jenkins v. Johnson*, 330 F.3d 1146, 1155 (9th Cir. 2003); *Miller v. Collins*, 305 F.3d 491, 495-96 (6th Cir. 2002); *Knight v. Schofield,* 292 F.3d 709, 711 (11th Cir. 2002); *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000).

The difficulty with Mr. Sudduth's argument is that the Court has already determined that the May 13, 1996 motions for transcripts and for leave to proceed *in forma pauperis* were not motions for post-conviction review, pursuant to 28 U.S.C.

18

§ 2244(d)(2).  Thus, the fact that Mr. Sudduth did not receive notice of the Court's

rulings on those motions cannot entitle him to equitable tolling of the limitations period.

Moreover, even if the May 13, 1996 motion for transcripts is properly characterized as a

motion for post-conviction review of the state court judgment, it is questionable whether

Mr. Sudduth acted diligently to pursue his rights.  The state court record reflects that Mr.

Sudduth filed a letter with the trial court inquiring about the status of his May 1996

motions on August 25, 1996.  He then filed two petitions for a writ of mandamus in the

Colorado Supreme Court (on October 17, 1996, and January 8, 1997) to obtain a ruling

on his motions.  Thereafter, Applicant took no action to inquire about the status of his

motions for over one year.  Mr. Sudduth did not file any other motions or inquiries in the

state district court until he filed a Colo. R. Crim. P. 35 motion for post-conviction relief on

April 29, 1998.  And, there is nothing in the record to reflect that Mr. Sudduth ever

inquired about the status of his April 30, 1996 letter (motion).  The Court need not

resolve the issue of Applicant's diligence, however, because the § 2254 Application is

time-barred regardless of whether Mr. Sudduth is entitled to equitable tolling based on

his delayed notice of the trial court's May 18, 1996 orders.

As discussed previously, **six days** elapsed on the AEDPA time clock between

April 24, 1996, when the one-year limitation period commenced, and April 30, 1996, the

date Mr. Sudduth filed his first post-conviction motion.  The April 30, 1996 motion was

pending until July 2, 1996, forty-five days after it was denied by the state district court

on May 18, 1996.  The May 18, 1996 motion for transcripts was also pending until July

2, 1996.  The Court will assume that the statute of limitations was equitably tolled from

July 2, 1996, to April 29, 1998 (when Applicant indisputably filed another post-conviction

19

motion), based on Applicant's failure to receive notice of the May 18, 1996 Orders.  The

one-year limitation period was then statutorily tolled from April 29, 1998, until March 14,

2011, when the Colorado Supreme Court denied certiorari review in the state post-

conviction proceeding.  Assuming that the statute of limitations was tolled for the entire

period from April 30, 1996, to March 14, 2011, based on statutory and equitable tolling,

Mr. Sudduth filed his federal application five days late.  Between March 14, 2011, and

March 14, 2012 (the date Mr. Sudduth filed his federal application), **364 days** elapsed

on the AEDPA time clock.[15]  Because **6 days** had already expired between April 24,

1996, and April 30, 1996, the federal application is untimely.  Accordingly, Applicant

must demonstrate a basis for equitable tolling for the periods April 26, 1996, to April 30,

1996, and March 14, 2011, to March 14, 2012.

For the first period--April 26, 1996, to April 30, 1996--Mr. Sudduth asserts his

status as a *pro se* prisoner as a basis for equitable tolling.  However, Applicant's

ignorance of the law does not excuse his failure to obtain timely federal habeas review

of his constitutional claims.  *Davis v. Roberts*, 425 F.3d 830, 835-36 (10th Cir. 2005)

(citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]gnorance of the law,

even for an incarcerated pro se petitioner, generally does not excuse prompt filing.")

(internal quotation marks omitted)).

To the extent Mr. Sudduth asserts that he is entitled to equitable tolling based on

the Supreme Court's narrow holding in *Martinez v. Ryan*, ___, U.S. ___, 132 S.Ct. 1309

---

[15]Even though 2012 was a leap year, the additional day does not count against Mr. Sudduth for
purposes of calculating the passage of the one-year period. *See United States v. Hurst*, 322 F.3d 1256,
1260 (10th Cir. 2000) (applying AEDPA limitations period to 28 U.S.C. § 2255 motion).

(2012), the Court finds that Applicant's reliance on *Martinez* is misplaced. In *Martinez*, the Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

The *Martinez* decision does not address the one-year limitation period in § 2244(d) or the issue of equitable tolling in any context. Accordingly, Mr. Sudduth has failed to demonstrate that equitable tolling applies for the period April 24, 1996, to April 30, 1996.

For the second period--March 14, 2011 to March 14, 2012--the Court observes that Mr. Sudduth has been represented by his current counsel since 2008. Applicant does not explain why he waited to file his federal Application until 364 days after his last state post conviction proceeding concluded. To the extent counsel reached mistaken legal conclusions relating to the AEDPA filing deadline, those errors do not toll the statute. *See Holland*, 130 S.Ct. at 2564 (observing that an attorney's lack of knowledge about the date the limitations period expired amounted to simple negligence that did not warrant equitable tolling); *see also Fleming v. Evans*, 481 F.3d 1249, 1256 (10th Cir. 2007) (an attorney's mistake does not entitled the petitioner to equitable tolling unless it constituted "egregious misconduct"; normal attorney negligence is insufficient) (quotation omitted). Accordingly, the Court finds that Mr. Sudduth has failed to assert an adequate basis for equitable tolling for the periods April 26 to April 30, 1996 and March 14, 2011 to March 14, 2012. His federal application therefore is time-barred unless another equitable exception to the one-year limitations period applies.

**B.      Actual Innocence**

Mr. Sudduth also asserts that the Application should not be dismissed as time-barred because he is actually innocent of the crimes of which he was convicted.

**1.      Applicable legal standards**

A petitioner's failure to file a federal habeas application within AEDPA's one-year limitation period may be excused based on "a sufficiently supported claim of actual innocence." *Lopez v. Trani*, 628 F.3d 1228, 1230 (10th Cir. 2010).  Actual innocence is an equitable exception to the statute of limitations, rather than a basis for tolling.  *Id.* "[A] claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  The Tenth Circuit has "stress[ed] that this actual innocence exception is rare and will only be applied in the extraordinary case." *Lopez*, 628 F.3d at 1231.

To establish a credible claim of actual innocence, a petitioner must support his claim with "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  *See also House v. Bell,* 547 U.S. 518, 537 (2006).  If such evidence is presented, the federal habeas court must "consider all the evidence, old and new, incriminating and exculpatory" and "make a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, 547 U.S. at 537-38.  The habeas petitioner must show "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327; *see also Bousley v. United States*, 523 U.S. 614, 623 (1998)

22

(discussing a petitioner's burden of proof under *Schlup* for actual innocence after pleading guilty).[16]

Furthermore, because the actual innocence exception requires "factual innocence, not mere legal insufficiency," *Bousley*, 523 U.S. at 623-24, a petitioner seeking the benefit of the exception must, where relevant, demonstrate his innocence as a complicitor. *See Parr v. Quarterman*, 472 F.3d 245, 252-53 (5th Cir. 2006) (§ 2254 petitioner not entitled to benefit from actual innocence exception where evidence showed his liability under state complicity statute); *Foster v. Phillips*, No. 07-4487-pr, 326 F. App'x 597 (2d Cir. May 6, 2009) (unpublished) (new evidence showing that defendant's accomplice shot victim, rather than defendant, was not sufficient to prove actual innocence of second degree murder, as required to excuse defendant's untimely petition for habeas corpus, where evidence failed to show that defendant did not act as the accomplice to the shooting.); *accord High v. Head*, 209 F.3d 1257, 1271 (11th Cir. 2000) (rejecting claim of actual innocence where evidence showed that petitioner was liable under a conspiracy theory, even if he did not shoot the victim himself).

### 2.   Analysis

#### a.  *second degree murder conviction*

The facts relevant to Mr. Sudduth's second degree murder conviction were summarized by the Colorado Court of Appeals as follows:

---

[16]The habeas petitioner must demonstrate his actual innocence with respect to dismissed charges as well as the charge(s) of conviction. *See Bousley*, 523 U.S. at 624 (holding, in § 2255 case, that "where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges"); *see also Johnson v. Pinchak*, 392 F.3d 551, 564-65 (3d Cir. 2004) (§ 2254 application).

A taxicab driver was shot in the head and killed in April 1995. [Mr. Sudduth] was sixteen years old at the time of this murder.

[Mr. Sudduth] and another juvenile, Nicholas Reed, indisputably were alone with the driver in the cab. Two girls had also been with them but were dropped off shortly before the murder.

There was evidence that [Mr. Sudduth] shot, or at the very least was complicit in shooting, the driver. [Mr. Sudduth] and Reed had planned to "jack" the driver to avoid paying the cab fare. The girls saw Reed hand [Mr. Sudduth] a gun.

Forensics showed that the fatal shot was fired from the left side behind the driver. [Mr. Sudduth] had been sitting in the left rear seat, while Reed sat in the right front passenger seat.

The girls told investigators that [Mr. Sudduth] afterwards ran around nervously trying to hide the gun. The gun ultimately was discovered in the yard in front of [Mr. Sudduth's] apartment. One of the girls also recounted a later three-way phone call, in which [Mr. Sudduth] and Reed described how [Mr. Sudduth] had shot the driver in the left side of the face.

[Mr. Sudduth] told both his public defenders that he had shot the driver. He claimed he killed the driver by dropping and accidentally discharging the gun.

Reed made contradictory statements, to investigators and others, as to the actual shooter. At some points, Reed claimed he shot the driver; other times, he claimed [Mr. Sudduth] was the shooter.

(ECF No. 1-18, at 2-3).

Mr. Sudduth's claim of actual innocence is based on the confession of his co-defendant, Nicholas Reed, who testified at Applicant's 2008 state post-conviction evidentiary hearing that he, not Applicant, shot the taxi cab driver. (State Court R. 11/21/08 Hrg. Tr., at 26-27). Specifically, Reed testified that he was standing on the driver's side of the cab, behind the driver and in front of Mr. Sudduth, and shot the cab driver because he was "cheating" them on the cab fare. (*Id.* at 30-31).

Following the evidentiary hearing, the state district court concluded that Mr. Reed's 2008 confession was "newly discovered evidence." (State Court R., Vol. 4, at 812, ¶ 6).  The Colorado Court of Appeals rejected the trial court's determination, finding that "[t]he district court erred as a matter of law in concluding that Reed's evidence was newly *discovered* simply because it was newly *available*."  (ECF No. 1-18, at 20 of 22).  The state appellate court reasoned:

> Our Supreme Court has long held that "[t]he fact that [a co-defendant's] testimony was not available to the defendant at trial because [the co-defendant] was unwilling to testify prior to his own trial does not make his testimony newly discovered." [State case law citations omitted]. Likewise, the vast "majority of [federal] circuits to have addressed the issue . . . hold that [Fed. R. Crim. P. 33] does not authorize district courts to grant new trials on the basis of such evidence since it is not newly discovered, but merely newly available."  *United States v. Owen*, 500 F.3d 83, 89 (2d Cir. 2007) (citing cases).

(*Id.* at 20-21).  *See also United States v. Muldrew*, 19 F.3d 1332, 1339 (10th Cir. 1994) (holding, in the context of a Fed. R. Crim. P. 33 motion for a new trial based on newly discovered evidence: "If a former codefendant who originally chose not to testify subsequently comes forward and offers testimony exculpating a defendant, the evidence is not newly discovered if the defendant was aware of the proposed testimony prior to trial.").

The Court finds that the substance of Reed's testimony in 2008 was not new evidence.  Mr. Sudduth was aware, before he pleaded guilty, that Reed had claimed to be the shooter to various individuals. Specifically, the following testimony was presented at Applicant's preliminary hearing:

> (1) Aurora police officer Ernie Ortiz testified that after Reed was arrested and transported to jail, Reed made the following unsolicited statement from his holding cell, in Ortiz's presence, before he was formally

25

interviewed:  "Did you hear about the cab driver that was killed by me?"
(State Court R. 5/2/95 Hrg. Tr., at 9).

(2) Aurora Police Officer Joe Petrucelli testified that he interviewed Reed's
friend, Matt Thomas, on April 6, 1995.  Thomas told Petrucelli that Reed
came over to his house on April 2, 1995, and told Thomas to watch the
news.  Reed returned to Thomas's house the following day and told Matt
that he had shot the cab driver with a 9mm.  (*Id.* at 59-60).

(3) Amy Thomas, Matt Thomas's sister, testified that she overheard a
conversation between Reed and Matt Thomas during which Reed told
Thomas that he had shot a man in the head.  (*Id.* at 40-41).

In addition, the prosecutor acknowledged at Applicant's providency hearing that

there was evidence that Applicant was not the shooter.  (*Id.*, 11/15/95 Hrg. Tr., at 3-4).

However, the prosecutor characterized Reed's insistence that he was the shooter as the

statements of a "remorseless braggart."  (*Id.* at 3).

Because the substance of Mr. Reed's 2008 confession was known to Mr.

Sudduth at the time he entered his guilty plea, Applicant's proffer of actual innocence

fails the first prong of the *Schlup* test--that he present "new reliable evidence" that was

not known prior to the providency hearing.  *See Schlup*, 513 U.S. at 324; *see also*

*Titsworth v. Mullin*, No. 10-7078, 415 F. App'x. 28, 31 (10th Cir. Feb. 7, 2011)

(unpublished) (claim of actual innocence failed where petitioner relied on facts that were

available to him at the time of his trial, citing *Cummings v. Sirmons*, 506 F.3d 1211,

1223–24 (10th Cir. 2007)).

Furthermore, even if Reed's 2008 confession was "new," Mr. Sudduth cannot

show that it is more likely than not that no reasonable juror would have found him guilty

of second degree murder beyond a reasonable doubt.  *Schlup*, 513 U.S. at 327.  A juror

reasonably could have discounted Reed's credibility and given no weight to his claim

that Mr. Sudduth was not the shooter, based on Reed's prior inconsistent statement to a

homicide detective during an April 6, 1995, police interview that Applicant stepped out of

the cab and shot the cab driver while Reed was searching his pants for money to pay

the cab fare.  (State Court R. 5/1/12 Hrg. Tr., at 30).  In addition, a reasonable juror

could conclude, based on the following additional evidence, that Mr. Sudduth was guilty

of second degree murder:

> (1) Nicholas Reed and Lindsey Killen told police detectives that Sudduth
> talked about "jacking" a cab while Reed, Killen, Sudduth, and Michelle Lee
> were at Sudduth's apartment before the shooting.  (*Id.* at 44-45, 47, 139).
>
> (2) Reed, Killen, and Lee told police detectives that Reed was in
> possession of a gun on the night of the shooting and that he handed the
> gun to Sudduth while the cab driver went into a gas station convenience
> store to make change.  (*Id.* at 56-57, 143-44, 153).
>
> (3) Reed, Killen, and Lee told police officers that Reed was sitting in the
> front passenger side of the cab and that Sudduth was sitting in the rear
> passenger seat behind the driver. (*Id.* at 13, 164-166).
>
> (4)  The forensic evidence showed that the cab driver was shot in the left
> side of the head, while he was sitting down in the driver's side of the cab.
> (*Id.* at 3-5).
>
> (5) After the shooting, Reed and Sudduth went to Sudduth's apartment,
> where they met up with Lee and Killen.  According to Reed and Killen, Mr.
> Sudduth told the girls that he had shot the cab driver.  (*Id.* at 38, 167).

Although a defense investigator testified at Mr. Sudduth's Rule 35(c) hearing

that, based on a reconstruction of the crime scene, it was more likely that Reed was the

shooter, not Applicant,[17] this testimony does not tend to prove Applicant's actual

innocence.  The defense investigator opined that firing the gun would have required Mr.

Sudduth, who is approximately six inches shorter than Mr. Reed, to raise his arm and

---

[17]State Court R. 6/2/09 Hrg. Tr., at 56-57, 59.

point the gun slightly downward while shooting, which not a "normal body movement." (State Court R. 6/2/09 Hrg. Tr. at 59-60, 64-65). However, the investigator conceded that her conclusions did not rule out Mr. Sudduth as the shooter. (*Id.* at 67, 69-70).

On consideration of all the evidence, both new and old, the Court cannot find that it is more likely than not that no reasonable juror would have found Mr. Sudduth guilty beyond a reasonable doubt of second degree murder.

Moreover, even if Reed shot the cab driver, he first had to exit the front passenger's side of the cab, walk around to the driver's side, and obtain the gun from Mr. Sudduth.  Applicant's conduct in handing Reed the gun is enough for a reasonable juror to find him guilty of second degree murder under a complicity theory.[18]

Accordingly, the Court finds that Mr. Sudduth has failed to demonstrate that he is entitled to equitable tolling of the AEDPA one-year limitation period based on his actual innocence of second degree murder.

### b.   *aggravated robbery conviction*

Respondents argue that the actual innocence exception should not be available to Mr. Sudduth to challenge his plea to aggravated robbery where he waived the factual basis of the crime. (ECF No. 9, at 43-44).

---

[18]Under Colorado principles of complicity, a person is legally accountable for the actions of another if, "with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in ... committing the offense." COLO. REV. STAT. § 18–1–603 (2011). To be a complicitor,  the person must have knowledge that the principal intends to commit the crime, must intend to promote or facilitate the commission of the offense, and must aid, abet, advise, or encourage the principal in the commission or planning of the crime. *Bogdanov v. People*, 941 P.2d 247, 253–54 & n. 10 (Colo.), *modified*, 955 P.2d 997 (Colo.1997), *disapproved of on other grounds by Griego v. People*, 19 P.3d 1 (Colo. 2001).

In *Bousley,* the Supreme Court recognized that a defendant who is challenging his conviction based on a guilty plea may establish his actual innocence to excuse a procedural default. *Bousley*, 523 U.S. at 623.[19]   However, the *Bousley* decision rested, in part, on the requirement in the federal system that there be "a factual basis for the plea." *Bousley,* 523 U.S. at 624 n.3 (citing Fed. R. Crim. P. 11(b)(3)).   By contrast, in Colorado a factual basis is not required. *See* § 16-7-207(2)(f), C.R.S. (2011) (defendant may waive establishment of factual basis to take advantage of plea agreement); Colo. R. Crim. P. 11(b)(6) (same).

In this case, the State, defense counsel, and Mr. Sudduth acknowledged on the record at the providency hearing that there was no factual basis for the aggravated robbery charge and that it was only being used for purposes of the plea agreement. (State Court R., 11/15/95 Hrg. Tr., at 9).   Mr. Sudduth indicated to the district court that he understood the State lacked evidence to support the charge of aggravated robbery, but he nevertheless entered a guilty plea.   (*Id.* at 9, 14).   In other words, Mr. Sudduth's innocence of the crime of aggravated robbery was known to the defense at the time of Mr. Sudduth's guilty plea, but Applicant chose to plead guilty for his own strategic reasons.   As such, the Court agrees with Respondents that Mr. Sudduth may not now assert his factual innocence with respect to that conviction.   In any event, Mr. Reed's testimony at the 2008 Rule 35(c) hearing that he and Mr. Sudduth did not take anything of value from the cab driver is not "new" evidence since this information was known to

---

[19]The Court notes that the question of whether a claim of actual innocence excuses a habeas petitioner's failure to comply with the AEDPA statute of limitations is the same as whether such a claim constitutes a showing of a fundamental miscarriage of justice that excuses the habeas petitioner's procedural default of a claim in state court.   *See Lopez*, 628 F.3d at 1230-31.

all parties at the time Mr. Sudduth pleaded guilty.  *See Schlup*, 513 U.S. at 324; *Titsworth*, 415 F. App'x. at 31.

Moreover, to the extent Mr. Sudduth argues his actual innocence of aggravated robbery based on his trial attorneys' alleged inadequacies in advising him to plead guilty to that charge, he asserts a claim of legal innocence rather than of factual innocence, which must fail under *Schlup. See Bousley*, 523 U.S. at 623 (emphasizing that "'actual innocence' means factual innocence, not mere legal insufficiency," citing *Sawyer v. Whitley,* 505 U.S. 333, 339, (1992)); *United States v. Gabaldon*, 522 F.3d 1121, 1124 n. 2 (10th Cir. 2008) (noting that "[a]ctual (factual) innocence is a ground for applying equitable tolling," but that "legal innocence" is not); *Jolly v. Gammon*, 28 F.3d 51, 54 (8th Cir. 1994) (rejecting petitioner's assertion that his guilty plea was induced by his constitutionally ineffective counsel as a claim of legal innocence rather than of factual innocence).

## IV.    Conclusion

Having reviewed Mr. Sudduth's allegations, the parties' briefs, and the state court record, the Court finds that Mr. Sudduth has failed to assert an adequate basis for equitable tolling of the one-year limitation period or to demonstrate his actual innocence as an exception to the untimely § 2254 Application.  Therefore, under 28 U.S.C. § 2244(d), Mr. Sudduth is time-barred from filing a federal habeas corpus action in this Court.  Furthermore, because the Application is clearly untimely, the Court need not

reach Respondents' other argument that Mr. Sudduth has procedurally defaulted his claim in the state courts, so that it is barred from merits review.  Accordingly, it is

ORDERED that the habeas corpus application is denied and the action is dismissed as barred by the one-year limitation period in 28 U.S.C. § 2244(d).  It is

FURTHER ORDERED that no certificate of appealability shall issue because Mr. Sudduth has not made a substantial showing both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

DATED at Denver, Colorado, this _26th_ day of ____October_____, 2012.

BY THE COURT:


__s/Lewis T. Babcock_____
LEWIS T. BABCOCK, Senior Judge
United States District Court